UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PROJECT DESIGN & PIPING, INC., | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:21-cv-00266-ALT |
| SIEMENS INDUSTRY INC., | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This case stems from Plaintiff Project Design & Piping, Inc.'s ("Project Design") breach of contract claim against Defendant Siemens Industry Inc. ("Siemens"). (*See* ECF 3-2). Before the Court is Siemens's second motion for summary judgment seeking the dismissal of Project Design's claims (ECF 64-1), prefaced by a notice filing (ECF 64), filed on May 7, 2025. For the following reasons, the motion for summary judgment will be granted.

**A.  Relevant Factual and Procedural History**

The Court will not recite the material facts underlying the claims in this case here, given they have previously been discussed at length in the Court's March 25, 2025, Opinion and Order on Siemens's first summary judgment motion. (*See* ECF 61). Instead, only the facts that are of most relevance now will be stated.

On March 25, 2025, the Court granted in part and denied in part Siemens's first summary judgment motion. (*Id.*; *see* ECF 47). In that Opinion and Order, the Court agreed with Siemens that a one-page addendum (the "Addendum") serves as part of the parties' contractual agreement, which, in sum, includes a purchase order, terms and conditions, and the Addendum (the "Agreement"); the Court, however, declined to interpret how the Addendum impacted Plaintiff's

claims absent further briefing by the parties. (*See* ECF 61 at 14-19).[1] Therefore, Siemens was granted leave to file a second summary judgment motion concerning the extent to which the Agreement precludes or limits Project Design's claims and damages in this case. (*See id*. at 19, 28).

Siemens filed its second motion for summary judgment, including a notice filing, on May 7, 2025. (ECF 64, 64-1). Project Design filed its response brief on May 30, 2025, and Siemens followed with its reply on June 13, 2025. (ECF 65, 66). Accordingly, this motion is now ripe for the Court's adjudication.

### B. Legal Standard: Contract Interpretation

"The ultimate goal of any contract interpretation is to determine the intent of the parties at the time that they made the agreement." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012) (citation omitted).[2] "Interpretation and construction of contract provisions are questions of law. As such, cases involving contract interpretation are particularly appropriate for summary judgment." *Panther Brands, LLC v. Indy Racing League, LLC*, 126 N.E.3d 898, 904 (Ind. Ct. App. 2019) (citations omitted). "If contract language is unambiguous, this court may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument." *Id*. at 905 (citation omitted). In doing, so the Court should generally give the terms within those four corners their ordinary meaning. *See Am. States Ins. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996).

---

[1] The Court further denied Siemens's first motion for summary judgment as to whether Siemens or Project Design breached the Agreement, citing material disputes of fact between the parties. (*See id*. at 25-28).

[2] As explained in the Court's March 25, 2025, Opinion and Order, the parties apparently agree that their contractual dispute is governed substantively by Indiana law given their reliance on Indiana cases in the briefs. (ECF 61 at 10 (citing ECF 47-1, 58, 60); *see also* ECF 64-1 at 3; ECF 65 at 2-3).

### C. Discussion: Exculpation of Damages

Siemens argues that paragraph 16 of the Addendum exculpates or releases it from damages associated with Project Design's breach of contract claim. (ECF 64-1 at 7). In support of this argument, Siemens explains that exculpatory clauses[3] are looked upon favorably by Indiana courts—with some exceptions of which this case does not involve. (*See id*. at 6-7). Paragraph 16 of the Addendum states as follows:

> 16 . . . : "NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, SUBCONTRACTOR/SUPPLIER IS NOT LIABLE, WHETHER BASED IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, INDEMNITY OR ANY OTHER LEGAL OR EQUITABLE THEORY, FOR: LOSS OF USE, REVENUE, SAVINGS, PROFIT, INTEREST, GOODWILL OR OPPORTUNITY, LOSS OF PRODUCTION, COSTS OF CAPITAL, COSTS OF REPLACEMENT OR SUBSTITUTE USE OR PERFORMANCE, LOSS OF INFORMATION AND DATA, LOSS OF POWER, VOLTAGE IRREGULARITIES OR FREQUENCY FLUCTUATION, CLAIMS ARISING FROM PROJECT DESIGN AND PIPING INC. THIRD PARTY CONTRACTS, OR FOR ANY TYPE OF INDIRECT, SPECIAL, LIQUIDATED, PUNITIVE, EXEMPLARY, COLLATERAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OR FOR ANY OTHER LOSS OR COST OF A SIMILAR TYPE."

(ECF 47-14 (bold font omitted)).

Siemens identifies several portions of paragraph 16 that it believes should preclude Project Design from prevailing on its breach of contract claim. (*See generally* ECF 64-1 at 7-16). First, Siemens contends that Project Design supplanted Siemens with Innovative Control Systems ("ICS"), qualifying ICS as a replacement or substitute subcontractor as referenced in paragraph 16. (*Id*. at 8-9). Siemens further states that Project Design claims entitlement to damages because of its termination of Siemens and subsequent hiring of its replacement

---

[3] "An exculpatory clause covers the risk of harm sustained by the exculpator . . . that might be caused by the exculpatee . . . . By releasing the exculpatee from liability for such harm, an exculpatory clause deprives the exculpator of its right to recover damages . . . ." *Morris v. McDonald's Corp*., 650 N.E.2d 1219, 1222 (Ind. Ct. App. 1995) (citations omitted).

subcontractors, including ICS. (*See id*. at 8-11). Consequently, Siemens asserts that it is exculpated from Project Design's expenses associated with hiring ICS, or any other replacement contractor. (*See id*.; *see also* ECF 47-14 ("subcontractor/supplier is not liable . . . for . . . costs of replacement or substitute use or performance . . . ." (bold font and capitalization omitted)). Siemens also asserts that it is not liable for Project Design's third-party contracts because they are barred under paragraph 16. (ECF 64-1 at 12 ("[Project Design] cannot establish any damages in support of its Breach of Contract claim against Siemens, because the costs purportedly incurred by [Project Design's] third-party contracts with other subcontractors are barred pursuant to Paragraph 16 of the Addendum."); ECF 47-14 ("subcontractor/supplier is not liable . . . for . . . claims arising from [Project Design's] third party contracts . . . ." (bold font and capitalization omitted)). Each of these arguments will be discussed.[4]

    1.  Replacement or Substitute Subcontractors

Siemens's first argument is that paragraph 16 of the Addendum precludes Project Design from recovering damages related to "costs of replacement or substitute use or performance[,]" including ICS and other subcontractors that Project Design used in place of Siemens. (ECF 64-1 at 9 (quoting ECF 47-14)). The terms in this clause are undefined in the Addendum, however, the Supreme Court of Indiana has inferred that courts may observe Black's Law Dictionary to determine the plain meaning of undefined contract terms. *See Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008) ("As the contract at issue does not define the term 'prevailing party,' we will turn to sources that reflect the ordinary meaning of the term at the time

---

[4] Siemens also argues that Project Design's claim for damages related to its engagement of replacement contractors is barred because those damages are prohibited as indirect, consequential, or special damages as referenced in paragraph 16. (*See* ECF 64-1 at 13-15; *see also* ECF 47-14). Because Project Design's breach of contract claim will be dismissed based on Siemen's other two arguments, the Court need not reach this additional argument.

4

the contract was executed. At the time of contract execution, Black's Law Dictionary defined 'prevailing party' as . . . ." (citing Black's Law Dictionary 1188 (6th ed.1990)).

Relevant here, Black's Law Dictionary defines "cost" as "[t]he amount paid or charged for something; price or expenditure." Black's Law Dictionary (10th ed. 2014).[5] Black's Law Dictionary does not define "replacement," however, it defines "substitute" as "[s]omeone who stands in another's place[,]" *id*.,—akin to the word "replacement" as ordinarily understood. It is undisputed that Project Design "*replaced* Siemens" with ICS "to complete work that was originally Siemens's responsibility." (ECF 61 at 9 (emphasis added); *see* ECF 59 ¶ 95 (citing ECF 47-6 at 199-200)). Consequently, it is clear that the costs associated with hiring ICS—along with other subcontractors who were hired by Project Design to replace Siemens's services—fall within the purview of "costs of replacement or substitute use or performance . . . ." (ECF 47-14). Indeed, Project Design does not suggest otherwise in its response brief. (*See* ECF 65 at 4-7).[6] Therefore, the parties do not dispute that to the extent Project Design seeks to hold Siemens liable for the funds it paid to ICS or another subcontractor after Project Design terminated Siemens, the breach of contract claim is barred by paragraph 16 of the Addendum.

2. Third-Party Contracts

Next, Siemens contends that Project Design cannot claim damages resulting from costs associated with its substitution because these costs stem from third-party contracts, as phrased in paragraph 16. (ECF 64-1 at 12; *see* ECF 47-14). Black's Law Dictionary defines a "third-party"

---

[5] As already explained, Indiana law guides courts to observe undefined terms in a contract as they are understood at the time of the contract's execution. *See Reuille*, 888 N.E.2d at 771 (Ind. 2008). The Court previously indicated that the Agreement was executed sometime between 2017 and 2018. (*See* ECF 61 at 4, 18). The tenth edition of Black's Law Dictionary was produced in 2014, whereas the eleventh edition was produced in 2019. *Compare* Black's Law Dictionary (10th ed. 2014), *with* Black's Law Dictionary (11th ed. 2019). Therefore, the tenth edition of Black's Law Dictionary is cited here.

[6] Instead, Project Design argues that the Addendum causes a lack of mutuality of obligation, an argument that the Court will discuss *infra*.

5

as "[s]omeone who is not a party to a lawsuit, agreement, or other transaction but who is [usually] somehow implicated in it; someone other than the principal parties." Black's Law Dictionary (10th ed. 2014). The term "contract" need not be defined as the Court penned at great length on the subject in its March 25, 2025, Opinion and Order, and the parties agree that they entered into a contract. (*See generally* ECF 61).

Neither party disputes that this cause of action arises from an agreed upon subcontractor construction contract between only Siemens and Project Design. (*Id*. at 14). Project Design's complaint avers that it "terminated the contract and hired other subcontractors to finish the work that was the subject of the parties' agreement" and that it "suffered damages as a result of Siemens's breach of the contract." (ECF 3-1 at 9). Paragraph 16 of the Addendum absolves Siemens from liability pertaining to "claims arising from [Project Design's] third party contracts . . . ." (ECF 47-14 (bold font and capitalization omitted)). Therefore, there is no plausible argument that the subcontractors referenced and alluded to in Project Design's complaint are not implicated as third parties or that Project Design's breach of contract claim does not arise from Project Design's contractual agreements with these third parties. Consequently, paragraph 16 of the Addendum precludes Project Design from seeking damages stemming from its third-party contract with ICS or any other subcontractor.

3. Mutuality of Obligation

Notably, Project Design does not argue that its breach of contract claims somehow fall outside the scope of the language in paragraph 16 of the Addendum. Rather, the only argument Project Design raises in response to Siemens's second summary judgment motion is that paragraph 16 of the Addendum lacks a contract principle known as mutuality of obligation. (*See* ECF 65 at 4-8). Project Design quotes the rule as follows:

> "Mutuality of obligation is essential to the validity of an executory bilateral contract which is based solely on mutual promises or covenants and unless both parties are legally bound, so that each may hold the other liable for its breach, the contract lacks mutuality and neither party is bound. Thus, mutuality is absent when only one of the contracting parties is bound to perform, and the other party remains entirely free to choose whether or not to perform, and the rights of the parties exist at the option of one only."

(ECF 65 at 6 (emphasis omitted) (quoting *Sec. Bank & Tr. Co. v. Bogard*, 494 N.E.2d 965, 968 (Ind. Ct. App. 1986)).

Specifically, Project Design believes that paragraph 16 of the Addendum tacitly precludes direct and indirect damages, thereby making the contract unenforceable because it withholds Project Design's right to any damages. (*Id*. at 6-7). In framing this argument, Project Design points the Court to the Seventh Circuit Court of Appeals case, *Reid Hospital and Health Care Services, Inc. v. Conifer Revenue Cycle Solutions, LLC*, 8 F.4th 642, 650 (7th Cir. 2021). That case pertains to an Indiana contract law issue where the court elucidates the differences between direct and indirect damages. *See id*. at 647-49. Project Design claims that the takeaway from *Reid* is that "the court was able to avoid an interpretation that resulted in a waiver of all damages (and the attendant issues of the contract being illusory and without mutuality of obligation)" since "the language at issue in that case allowed the court to conclude that the contractual limitation in question did not apply to direct damages." (ECF 65 at 7). In this case Project Design claims that, in contrast to *Reid*, paragraph 16 precludes *both* direct and indirect damages, rendering it illusory and without mutuality of obligation. (*Id*.). Project Design's argument, however, is misapplied to the instant case.

Though Project Design correctly defines mutuality of obligation, it understates its role as a sophisticated commercial actor, hence misapplying the rule. *See Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 950-51 (Ind. 2001) ("Sophisticated commercial actors should be free to allocate risks as they see fit, and courts should not interfere

simply because such risks have materialized."). Indiana allots competent contracting parties a great deal of discretion to agree upon their own terms, even if those terms may appear unreasonable. *See U.S. Automatic Sprinkler Corp. v. Erie Ins. Exch.*, 204 N.E.3d 215, 222 (Ind. 2023) ("Contracting parties can limit the availability of remedies in various ways. For instance, they can include a clause that limits one party's liability to the other only for damages that arise in a specific manner." (citations omitted)); *Pinnacle Comput. Servs., Inc. v. Ameritech Publ'g, Inc.*, 642 N.E.2d 1011, 1015 (Ind. Ct. App. 1994) ("People should be entitled to contract on their own terms without the indulgence of paternalism by the courts in the alleviation of one side or another from the effects of a bad bargain." (citation omitted)).

To be sure, there are exceptions that, in the interest of public policy, would make an exculpatory clause unenforceable, yet the instant case does not fit any of those circumstances. *See Pinnacle Comput. Servs., Inc.*., 642 N.E.2d at 1014 ("Although no public policy exists to prevent contracts containing exculpatory clauses, some exceptions do exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public." (citation omitted); *see also Wabash Cnty. Young Men's Christian Ass'n, Inc. v. Thompson*, 975 N.E.2d 362, 366 (Ind. Ct. App. 2012) ("It is well established in Indiana that exculpatory agreements are not against public policy." (citation omitted)); *Indiana Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1072 (Ind. Ct. App. 2001).

Accordingly, it would be improper for the Court to interfere in a free and conscionable agreement between two sophisticated corporate parties. To that point, neither party contends that they were coerced into their agreement or that there was some sort of inequitable treatment during negotiations. *See Pinnacle Comput. Servs., Inc.*., 642 N.E.2d at 1015 ("[T]he situation

8

here is not one of an uninformed consumer and a coercive or fraudulent company." (citation omitted)). As such, the Court will not intervene. *See Gen. Bargain Ctr. v. Am. Alarm Co.*, 430 N.E.2d 407, 411-12 (Ind. Ct. App. 1982) (discussing "no damages" clauses to contracts and stating "Indiana, likewise, recognizes exculpatory clauses. Parties are permitted to make such contracts so long as they are knowingly and willingly made and free from fraud."). And though Project Design now insists that it has no form of relief given the language of paragraph 16 of the Addendum, Project Design agreed to the Agreement's terms with its performance and later chose to pay Siemens $346,329.70 for Siemens's services—without the force of a court order. (*See* ECF 61 at 9, 18; ECF 65 at 4-7). Project Design complains that Siemens's performance was woeful, yet these alleged performance issues should have been contemplated as a possibility during contract negotiations. (*See* ECF 61 at 22-24). Project Design cannot now ameliorate its business decisions through its breach of contract claim.

### D.  Discussion: Limitation of Damages

In relevant part, paragraph 17 of the Addendum purports to limit Siemens's maximum liability for claims brought by Project Design based in contract. (ECF 47-14). Neither party disputes this interpretation of the paragraph, and the Court agrees. (ECF 64-1 at 16-17; ECF 65 at 7). Siemens avers that a reading of paragraphs 16 and 17 together indicates that the parties aimed to exculpate Siemens from liability on certain damages, and in the alternative, to limit Siemens's damages. (ECF 64-1 at 16-17); *see Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind. Ct. App. 2004) (The Court "must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict." (citation omitted)). This

interpretation of the two provisions is reasonable.[7] Thus, the Court finds no fault in the parties' agreement to limit Siemens's damages in this manner.

In sum, the Court agrees with Siemens that Project Design is barred from claiming damages as a result of the expenses associated with its subsequent substitute subcontractors pursuant to the exculpatory clause in paragraph 16 of the Addendum. And while paragraph 17 of the Addendum limiting Siemens's maximum liability under the Agreement is also valid, paragraph 17 is not material here given that Project Design's claims will be dismissed pursuant to paragraph 16. Therefore, Siemens's second motion for summary judgement will be granted, and Project Design's breach of contract claim will be dismissed.

### E. Conclusion

For the reasons described herein, Siemens's second motion for summary judgment (ECF 64-1) is GRANTED and Project Design's breach of contract claims (ECF 3-2) are hereby DISMISSED. Siemens's counterclaims for breach of contract and account stated remain. (ECF 8). The Court, by separate order, will set this matter for a scheduling conference to discuss Siemens's counterclaims.

SO ORDERED.

Entered this 4th day of September 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge

---

[7] As one legal journal explains, the combination of an exculpatory clause and limitation on liability clause is standard practice in construction contracts. *See* Gregg M. Jacobson, Unnecessary Paternalism: Why Bad Faith Limitations on Liability Should Be Enforced Between Sophisticated Entities, 12 No. 1 A.C.C.L.J 3 (Jan. 2018) https://1.next.westlaw.com/Document/I6ee1bed8f06911e7bc7fd2904d764cdd/View/FullText.html?transitionType=UniqueDocItem&contextData=(sc.Search)&userEnteredCitation=12+No.+1+A.C.C.L.J+3. "Every construction lawyer is familiar with contract provisions barring recovery of consequential or incidental damages, commonly known as limitation of liability clauses. Similarly familiar are exculpatory clauses . . . . These types of protective clauses are typically enforced by courts." *Id*.